**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entitled similarly situated, | Case No. 2:19-cv-01341-MJH |
| Plaintiff, | Judge Marilyn J. Horan |
| v. | |
| AMERICAN ADVISORS GROUP, et al., | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR AWARD OF ATTORNEYS' FEES, EXPENSES, AND CLASS REPRESENTATIVE AWARD**

## I.    INTRODUCTION

Plaintiff Stewart Abramson ("Plaintiff"), along with Defendant American Advisors Group ("AAG" or "Defendant") (Plaintiff and AAG are collectively referred to as the "Parties"), have reached a class action settlement of this matter, for which the Court granted preliminary approval on May 6, 2020.  (Doc. 69.)

Plaintiff submits this memorandum to separately address his request for a class representative award, as well as an award of attorneys' fees and expenses.  The Settlement includes the establishment of a $3,500,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who file a valid claim after payment of notice and administration costs (if approved), Plaintiff's Counsel fees and costs (if approved), and an Incentive Award to the Plaintiff (if approved).[1]  There is no reverter in the Settlement Fund.

For the reasons set forth below, Plaintiff respectfully submits that his requested class representative Incentive Award of $10,000, an attorneys' fee award of one-third of the

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement ("Settlement" or "Agreement"), filed at Doc. 68-1.

Settlement Fund, and an award of $12,775.25 in expenses are well justified in light of the excellent result achieved for the Settlement Class under applicable Supreme Court and Third Circuit precedents.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating any telephone solicitation to a phone using an ATDS or an artificial or prerecorded voice.  *See* 47 U.S.C. § 227(b).  The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing your number on the National Do Not Call Registry.  *See* 47 U.S.C. § 227(c)(5).  The TCPA provides a private cause of action to persons who receive such calls.  *Id.* and 47 U.S.C. § 227(b)(3).

Plaintiff is a Pennsylvania resident whose telephone numbers have been called with unsolicited messages for years.  On October 18, 2019, Plaintiff filed a putative class action complaint in the United Stated District Court for the Western District of Pennsylvania against Defendant alleging claims for violations of the TCPA.  On March 9, 2020, the Plaintiff filed a First Amended Complaint against the Defendant and Complete Business Marketing Company, LLC DBA Exclusive Prospect.  Since the filing of the original complaint, the Parties engaged in discovery and other litigation relating to class certification and other issues.  During discovery, the Plaintiff took the Defendant's deposition and received thousands of pages of documents relating to the Defendant's policies and procedures for compliance with the TCPA, the dialing system used to make the calls to putative class members, and the relationship between the Defendant and its telemarketing vendor, as well as the targets of the telemarketing campaigns.

The Parties mediated this case with Bruce Friedman from JAMS.  While a settlement was not reached during the initial mediation session, it eventually culminated in the Settlement

Agreement that was submitted to the Court in conjunction with the Motion for Preliminary Approval.  (Doc. 68.)

The Settlement preliminarily approved by the Court establishes a non-reversionary $3,500,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) court-approved attorneys' fees of up to one-third of the total amount of the Settlement Fund; (4) Plaintiff's out of pocket expenses not to exceed $12,775.25; and (5) a court-approved Incentive Award to the Class Representative of up to $10,000.

Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all Settlement Administrative Expenses, Incentive Awards, and fee awards are paid out of the Settlement Fund.  If all the attorneys' fees, expenses, Incentive Award, and Settlement Administration Expenses are approved as requested, Plaintiff's Counsel currently estimates that the average Settlement Class Member payment would be approximately $200.

## III.   ARGUMENT

### A.   Class Counsel Are Entitled to a Fee Award from the Common Fund

Compensating counsel for the actual benefits conferred on the class members must be the fundamental consideration in awarding attorneys' fees, as a court is attempting to award counsel for the result achieved.  The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common fund doctrine is 'based on the equitable notion that those who have benefited from litigation should share its costs,' and that unless the costs of litigation are spread to beneficiaries of the fund they will be unjustly enriched by the attorney's efforts."  *Petruzzi's Inc. v. Darling-*

*Delaware Co.*, 983 F. Supp. 595, 603 (M.D. Pa. 1996) (quoting *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 250 (1985)).

An attorney who creates a "common fund" or "substantial benefit" allocable with some exactitude to a definite group of persons acquires an equitable claim against that group for the costs incurred in creating the fund or benefit. *Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161 (1939); *Trustees v. Greenough*, 105 U.S. 527 (1882). Historically, the rationale entitling counsel to a percentage of the common fund derives from the equitable powers of the courts under the doctrines of quantum meruit, *Cent. R.R. & Banking Co. of Georgia v. Pettus*, 113 U.S. 116, 124 (1885); unjust enrichment, *see, e.g., Greenough*, 105 U.S. at 532-33; and later, what has become known as the "substantial" or "common benefit" doctrine. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392-94 (1970). All of these doctrines now fall under the larger umbrella of the "common fund" doctrine. Under the common fund doctrine, fee reimbursement is permitted in the following circumstances: (1) when litigation indirectly confers substantial monetary or non-monetary benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the subject matter of the suit, and over a named party who is a collective representative of the class, makes possible an award that will operate to spread the costs proportionately among class members. H. NEWBERG, ATTORNEY FEE AWARDS § 2.01 at 28-29 (1986).

Such cases as this one, therefore, are called "common benefit" or "common fund" cases, and "[i]t is well-settled that a lawyer who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable from that fund." *Boeing,* 444 U.S. at 478-79; *Mills*, 396 U.S. at 391-92. And, as the Supreme Court has explained, in contrast to statutory fee shifting where fees are calculated "under the common fund doctrine … a reasonable fee is based on *a percentage of the fund bestowed upon the class*." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) (emphasis added).

"The percentage-of-recovery method is generally favored in cases involving a common fund," such as here. *Dewey v. Volkswagen Aktiengesellschaft*, 558 F. App'x. 191, 196-97 (3d Cir. 2014) (quoting *In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 732 (3d Cir. 2001)). That method "allows courts to award fees from the fund 'in a manner that rewards counsel for success and penalizes it for failure.'" *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (citation omitted). The percentage-of-the-fund method thus "'directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *Wal-Mart Stores, Inc. v. Visa U.S.A.*, 396 F.3d 96, 122 (2d Cir. 2005) (citation omitted).

## B.    The Requested Fee of One-Third Is Fair and Reasonable

The Settlement establishes a non-reversionary common fund of $3,500,000, from which Settlement Class Members will receive payments and Plaintiff's Counsel will receive any fee and expense reimbursement. The Third Circuit has identified ten factors that courts should consider in reviewing a request for attorneys' fees in such a common-fund case. These include:

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). The *Gunter/Prudential*

factors should not "be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case." *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 U.S. Dist. LEXIS 6929, at *12 (E.D. Pa. Jan. 24, 2011). As demonstrated below, the above factors strongly support the requested one-third fee as appropriate, fair, and reasonable.

### 1.    The Size of the Fund Created and Number of Persons Benefitted

The proposed Settlement Class includes approximately 1,361,086 unique telephone numbers. In accordance with the Settlement Agreement, Notices and Claim Forms were emailed and mailed to the registered subscribers to these numbers. Subject to final approval by the Court, Settlement Class Members who submit a valid Claim Form will receive an equal share of the net Settlement Fund (after deducting fees, expenses, and Incentive Award approved by the Court). (Settlement Agreement, Doc. 68-1.) As of July 14, 2020, the Settlement Administrator has received approximately 6,626 Claim Forms, with a deadline of August 4, 2020 that will continue to allow for claims forms to be filed. (Declaration of Anthony I. Paronich in Support of Motion for Award of Attorneys' Fees, Expenses, and Class Representative Award ("Paronich Decl."), attached hereto as Exhibit 1, ¶ 12.) Based on Plaintiff's estimate, if the Court approves the fees and costs requested and the Incentive Award, and the final amount of Claim Forms reaches 10,000, the distribution to each current claimant would be approximately $200. (*Id.* ¶ 13.) Such a distribution would exceed many other approved TCPA settlements[2], heavily in favor of the fee requested. Thus, the size of the Settlement Amount obtained by Plaintiff's Counsel and the

---

[2] *See, e.g.*, *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)); *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 493 (N.D. Ill. 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60).

number of persons who will be benefitted by the Settlement weigh heavily in favor of the requested fee.

### 2.    The Presence or Absence of Substantial Objections

The Notice disseminated to the Settlement Class disclosed that Plaintiff would seek an attorneys' fee award of one-third of the Settlement Fund ($1,166,665), plus incurred expenses of $12,775.25, and an Incentive Award in the amount of $10,000.  No objections have been filed as of the date of this filing.  Plaintiff will address this factor in the motion for final approval, which is due on September 15, 2019, in advance of the Final Approval Hearing scheduled for September 29, 2020.  (Doc. 69.)

### 3.    The Skill and Efficiency of the Attorneys Involved

The quality of the representation is also relevant in determining fee awards.  "The Third Circuit has explained that the goal of the percentage fee-award device is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'"  *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 747 (E.D. Pa. 2013) (quoting *Gunter v. Ridgewood Energy Corp.*, 223 F.3d at 198).  "In evaluating the skill and efficiency of the attorneys involved, courts have looked to 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'"  *Alexander v. Wash. Mut., Inc.*, No. 07-cv-4426, 2012 U.S. Dist. LEXIS 171611, at *6 (E.D. Pa. Dec. 4, 2012) (quoting *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000)).

Here, the quality of Plaintiff's Counsel's representation of Plaintiff and the Class, as well as their skill and experience in the specialized field of consumer class action litigation and TCPA litigation, support the requested fee.  (*See* Paronich Decl. ¶¶ 2-11.)  As discussed above and

below, Class Counsel obtained a substantial non-reversionary cash recovery for the Class, where

the risks and uncertainties of continued litigation could result in no recovery for the Class

whatsoever, even after years of costly litigation.

This factor supports approval of the requested fee.

### 4.    The Complexity and Duration of the Litigation

Courts have long recognized that "particularly in class action suits, there is an overriding

public interest in favor of settlement,' ... because ... 'class action suits have a well deserved

reputation as being most complex.'" *In re Pool Prods. Distrib. Market Antitrust Litig.*, 310

F.R.D. 300, 316 (E.D. La. 2015) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir.

1977)).  "Settlement 'has special importance in class actions with their notable uncertainty,

difficulties of proof, and length.'" *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474-Goodman,

2016 U.S. Dist. LEXIS 50315, at *26 (S.D. Fla. Apr. 13, 2016) (quoting *Turner v. Gen. Elec.

Co.*, No. 05-cv-186-FTM-99DNF, 2006 U.S. Dist. LEXIS 65144, at *5 (M.D. Fla. Sept. 13,

2006) ("Settlements of complex cases contribute greatly to the efficient utilization of scarce

judicial resources, and achieve the speedy resolution of justice[.]").  Here, this case has been

pending for less than a year, and despite involving complex and evolving statutory interpretation

and other issues, Class Counsel was able to work expeditiously to develop the case and bring the

matter to a resolution in an efficient and effective manner.

"'One purpose of the percentage method' of awarding fees — rather than the lodestar

method, which arguably encourages lawyers to run up their billable hours — 'is to encourage

early settlements by not penalizing efficient counsel ....'" *Gunter v. Ridgewood Energy Corp.*,

223 F.3d at 198 (quoting Manual For Complex Litig. (Third) § 24.121).

Moreover, the Third Circuit has instructed that "[w]hat matters is not the amount or type

of discovery class counsel pursued, but whether they had developed enough information about

the case to appreciate sufficiently the value of the claims." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) ("[R]equiring parties to conduct formal discovery before reaching a proposed class settlement would take a valuable bargaining chip — the costs of formal discovery itself — off the table during negotiations.  This could deter the early settlement of disputes.").

And "the participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted).

Here, the Parties reached the Settlement through formal mediation sessions with a highly respected, independent mediator, Bruce Friedman of JAMS.  Prior to agreeing to the Settlement, Plaintiff's Counsel was well-versed in both the applicable law and facts at issue.  In addition to conducting initial legal and factual research, Plaintiff's Counsel received extensive document discovery from Defendant, and business records and call data relevant to the TCPA claims alleged, and deposed the Defendant.  (Paronich Decl. ¶ 9.)  Plaintiff's Counsel then considered the relative strengths and weaknesses of the Parties' claims and contentions and the benefits the Settlement offers to the Class.  In view of the risks, uncertainties, and costs of continued litigation, Plaintiff and his counsel made the reasoned decision that the terms of the Settlement are fair, reasonable, and adequate and that the Settlement is in the best interest of the Class.

As many courts have endorsed, "[i]nstead of the lengthy, costly, and uncertain course of further litigation, the settlement provides a significant and expeditious route to recovery ... [such that] it may be preferable 'to take the bird in the hand instead of the prospective flock in the bush.'" *In re Currency Conversion Fee Antitrust Litig.*, No. 1409, M 21-95, 2006 U.S. Dist. LEXIS 81440, at *16 (S.D.N.Y. Nov. 8, 2006) (citation omitted).  Absent the settlement, it is

"entirely possible that the class would have recovered nothing at all, or a range of recovery not far from what this bird-in-the-hand supplies." *In re ATI Techs., Inc. Secs. Litig.*, No. 01-cv-2541, 2003 U.S. Dist. LEXIS 7062, at *7 (E.D. Pa. Apr. 28, 2003).[3]

This factor also weighs in favor of approving the requested fee.

### 5.    The Risk of Nonpayment

"Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees." *Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242, at *41 (D.N.J. May 21, 2015). As many courts have recognized, "[s]uccess is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable." *Martin v. Foster Wheeler Energy Corp.*, No. 06-cv-0878, 2008 U.S. Dist. LEXIS 25712, at *12 (E.D. Pa. Mar. 31, 2008). "[C]ourts have recognized that the risk of non-payment is heightened in a case of this nature where counsel accepts a case on a contingent basis." *Reinhart v. Lucent Techs., Inc.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004).

Here, Plaintiff's Counsel "accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement."). In prosecuting this case, counsel faced the "risks of establishing liability," as well as certifying and maintaining a

---

[3] As the Court is aware from experience, the risk of no recovery here—and in complex cases of this type more generally—is real. In numerous hard-fought lawsuits, plaintiffs' attorneys (including the undersigned) have received little or no fee—despite *years* of excellent, professional work—due to the discovery of facts unknown when the case started, changes in the law while the case was pending, or a decision of a judge, jury, or court of appeals. *See, e.g., Hubbard v. BankAtlantic Bancorp, Inc.,* 688 F.3d 713 (11th Cir. 2012) (affirming district court's ruling overturning jury verdict in favor of plaintiff class); *In re Oracle Corp. Secs. Litig.,* No. 01-cv-00988-SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd,* 627 F.3d 376 (9th Cir. 2010) (affirming summary judgment for defendants after eight years of litigation).

certified class through judgment and any appeal.  *In re Rite Aid*, 396 F.3d 294, 304 (3d Cir. 2005).

　　While AAG has agreed to settle, it was not without significant defenses.  First, when the Settlement Agreement was signed, the constitutionality of the TCPA was being reviewed by the Supreme Court in *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19- 631 (petition for cert filed Nov. 14, 2019)).  While that petition was pending, a number of TCPA cases were stayed.  *See, e.g., Lindenbaum v. Realgy, LLC*, No. 1:19-cv-2862, Doc. 16 (N.D. Ohio Mar. 19, 2020); *Nelson v. PMC Home & Auto Ins. Agency LLC*, 6:19-cv-1387, Doc. 52 (D.S.C. Mar. 10, 2020); *Jones v. USHealth Grp., Inc.*, 2:19-cv-2534, Doc. 53 (D. Kan. Mar. 12, 2020); *Meyers v. Facebook, Inc.*, 3:18-cv-0062, Doc. 55 (N.D. Cal. Jan. 24, 2020).  Here, under this uncertainty, the Parties reached their settlement.

　　Another one of those risks focuses on the question of whether the dialing system, which Plaintiff contends is a predictive dialer, is an "Automatic Telephone Dialing System" under the TCPA.  As an initial matter, on July 10, 2015, the FCC released an omnibus declaratory ruling clarifying numerous relevant issues affecting the TCPA, including definition of an ATDS under the statute[4]—which was overturned in part in *ACA Int'l v. FCC*, 885 F.3d 687 (D.C. Cir. 2018). Following the D.C. Circuit's decision in *ACA Int'l,* courts have been split on what constitutes an ATDS under the TCPA.

　　There is a substantial amount of cases finding predictive dialers are likely not an ATDS. The Third Circuit Court of Appeals adopted a similar stance in *Dominguez v. Yahoo, Inc.,* 894 F.3d 116 (3d Cir. 2018):

---

[4] *See* https://apps.fcc.gov/edocs_public/attachmatch/FCC-15-72A1.pdf.

> The decision in ACA International has narrowed the scope of this appeal. In light of the D.C. Circuit's holding, we interpret the statutory definition of an autodialer as we did prior to the issuance of 2015 Declaratory Ruling. Dominguez can no longer rely on his argument that the Email SMS Service had the latent or potential capacity to function as autodialer. The only remaining question, then, is whether Dominguez provided evidence to show that the Email SMS Service had the present capacity to function as [an] autodialer.
>
> ***
>
> Ultimately, Dominguez cannot point to any evidence that creates a genuine dispute of fact as to whether the Email SMS Service had the present capacity to function as an autodialer by generating random or sequential telephone numbers and dialing those numbers. On the contrary, the record indicates that the Email SMS Service sent messages only to numbers that had been individually and manually inputted into its system by a user. There can be little doubt that Dominguez suffered great annoyance as a result of the unwanted text messages. But those messages were sent precisely because the prior owner of Dominguez's telephone number had affirmatively opted to receive them, not because of random number generation. The TCPA's prohibition on autodialers is therefore not the proper means of redress.

*Id.* at 119, 121.  In *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020), the Eleventh Circuit weighed in on the definition of an ATDS, holding that only those devices that dial randomly or sequentially generated numbers (without any human intervention whatsoever) constitute an ATDS. Conversely, "predictive dialers," which the Eleventh Circuit defined as devices "that call a list of pre-determined potential customers"—are not an ATDS under the TCPA. *Id.* at 1308–09. This is because predictive dialers do not "randomly or sequentially" dial numbers, but instead dial previously identified numbers from a stored list. *Id.* The Seventh Circuit Court of Appeals adopted a similar position. *See Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 466-69 (7th Cir. 2020). It is undisputed that the dialing system used in this case does not "create" or generate the telephone numbers it dials out of thin air.

Indeed, while this Settlement was pending, another federal court in Pennsylvania held that the same dialing system that was used by AAG was not an ATDS under the TCPA. *See Panzarella v. Navient Sols., LLC*, No. 18-3735, 2020 U.S. Dist. LEXIS 104746, at *12 (E.D. Pa. June 15, 2020) ("[T]here is not a genuine issue of material fact regarding the ability of the ININ dialing system, on its own, as configured by Defendant, to generate random or sequential telephone numbers to be dialed.  The Court therefore finds, based on the record presented to it, that the ININ system, as used by Defendant, is not an ATDS.").

Class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *3 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action), *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).  Even if the class were certified, the Plaintiff would still have a substantial obstacle regarding AAG's vicarious liability for the alleged conduct of the vendors.  The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA.

In addition, in a TCPA case such as this, the potential damages could bankrupt AAG. Unlike a large public company with extensive financial resources, AAG is a regional, privately-held company.  As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation.... *[C]omplete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant].... [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added); *see also Reinhart*, 327 F. Supp. 2d at 438 ("[T]he risk of nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)). The risks associated with this case were highlighted when the Supreme Court just last week agreed to hear a case involving a circuit split that exists as to the appropriate definition of an ATDS under the TCPA. *Duguid v. Facebook, Inc.*, No. 17-15320 (9th Cir.), *cert. granted* July 9, 2020. The outcome of that case could potentially have rendered the claims of the class under the Settlement Agreement completely worthless and certainly would have delayed any resolution of this matter by a year or more had the parties not come to an agreement prior to the Supreme Court agreeing to weigh in on an issue at the heart of this case.

The typical risks of nonpayment are accentuated in the current economic client where the country is facing the COVID-19 pandemic and the accompanying financial stress that is affecting nearly every business and individual in some form or fashion. The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.

Again, this factor weighs in favor of approval.

6.      **The Amount of Time Devoted by Plaintiff's Counsel**

The efforts put forth by Plaintiff's Counsel in a relatively compressed period of time brought this matter to a resolution quickly.  Plaintiff's Counsel reviewed and analyzed an extensive production of in excess of 7,000 pages of documents and 2.3 gigabytes of related data and deposed the Defendant before finalizing the Settlement.

Because Plaintiff's Counsel seeks a fee based on the creation of a "common fund" as opposed to seeking statutorily award attorneys' fees, the Court need not undertake a lodestar calculation and analysis.   *See, e.g., Rossini v. PNC Fin. Servs. Grp. Inc.*, No. 2:18-cv-1370, 2020 U.S. Dist. LEXIS 113242, at *59-60 (W.D. Pa. June 26, 2020) (finding that a lodestar calculation was "not required, and not particularly useful" in FCRA case creating a common fund for class members).[5]

Indeed, the Third Circuit has recognized that a more important consideration than the amount of time spent by counsel in achieving a settlement may be how that time is utilized, and has recommended that counsel that brings about a quick and efficient resolution for a class should be entitled to a premium incentive above the typical percentages.  *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. at 255.  And while Plaintiff's Counsel believes the speed at which this Settlement was achieved would merit such a "premium incentive," it seeks only the standard percentage that has typically been awarded in common fund cases of this type.

This factor weighs in favor of the requested fee.

---

[5] Fee awards are of course entirely up to the discretion of this Court.  Plaintiff's Counsel appreciates this fact; the Court can award a lower fee if that is what it concludes is fair, and even engage in an extensive "lodestar" inquiry if it believes that is the analysis it prefers.  Plaintiff's Counsel will readily supplement this submission with any additional data or materials the Court may deem necessary.

### 7.    The Awards in Similar Cases

The Third Circuit recently affirmed attorneys' fees constituting one-third of a settlement fund in a TCPA case that had been contested by an objector, and where the fund included a reverter provision (not present here).  *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016).  Class Counsel's request for an award of attorneys' fees of 33 1/3% of the common fund here is also well within the range of fee awards in cases across the country.  *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 822 (3rd Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund" (citation omitted)); *Cullen v. Whitman Medical Corp.*, 197 F.R.D. at 150 ("the award of one-third of the fund for attorneys' fees is consistent with fee awards in a number of recent decisions within this district"); *In re Gen. Instrument Secs. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (awarding fees of one-third in class action settlement); *Vandervort v. Balboa Capital Corp.*, 8 F. Supp. 3d 1200, 1210 (C.D. Cal. 2014) (awarding fees of one-third on TCPA class action); *Gaskill v. Gordon*, 160 F.3d 361, 362–63 (7th Cir. 1998) (affirming award of 38%); *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986) (finding 40% to be "the customary fee in tort litigation"); *Retsky Family Ltd. P'ship v. Price Waterhouse, LLP*, No. 97-7694, 2001 U.S. Dist. LEXIS 20397, at *11 (N.D. Ill. Dec. 10, 2001) (customary contingent fee is "between 33 1/3% and 40%"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1292-98 (11th Cir. 1999) (affirming award of 33 1/3% of a $40 million settlement fund); *Allapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185 (S.D. Fla. 2006) (awarding fees of 31 1/3% of $1.06 billion settlement fund); *In re: Terazosin Hydrochloride Antitrust Litig.*, No. 99-MDL-1317-SEITZ/KLEIN, 2005 U.S. Dist. LEXIS 43082 (S.D. Fla. Apr. 19, 2005) (awarding fees of 33 1/3% of settlement fund of over $30 million); *In re: Managed Care Litig. v. Aetna*, No. 1334, 2003 WL 22850070 (S.D. Fla. Oct. 24, 2003)

(awarding fees and costs of 35.5% of settlement fund of $100 million); *Gutter v. E.I. Dupont De Nemours & Co.*, No. 95-2152-CIV-GOLD, 2003 U.S. Dist. LEXIS 27238 (S.D. Fla. May 30, 2003) (awarding fees of 32 1/3% of settlement fund of $77.5 million).

Thus, this factor weighs in favor of approval.

### 8. The Value of Benefits Attributable to the Efforts of Class Counsel Relative to the Efforts of Other Groups

Here, "[t]he entirety of the value achieved for the Class was attributable to Class counsel; no other groups, such as government agencies conducting investigations, were involved in this case." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 421 (E.D. Pa. 2010) (approving 33.1% fee in consumer class action).

This factor supports the fee requested.

### 9. The Percentage Fee that Would Have Been Negotiated Had the Case Been Subject to a Private Contingent Fee Arrangement

"[T]he goal of the fee setting process is to 'determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order.'" *In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532, at *47 (E.D. Pa. June 2, 2004). "'[I]n private contingency fee cases, particularly in tort matters, plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.'" *Bradburn Parent Teacher Store*, 513 F. Supp. 2d at 340 (quoting *In re Ikon*, 194 F.R.D. at 194)).  Thus, the one-third sought here is in line with such contingency fees.

This factor too favors the one-third fee requested.

### 10. Any Innovative Terms of Settlement

"The terms of this settlement are relatively standard.  In the absence of any innovative terms, this factor neither weighs in favor nor against the proposed fee request." *Med. Mut. of Ohio v. Smithkline Beecham Corp.*, 291 F.R.D. 93, 105 (E.D. Pa. 2013).

- 17 -

Based on the above analysis, the requested attorneys' fee is fair and should be granted.

**C.      Plaintiff's Counsel's Expenses are Reasonable and Should Be Reimbursed**

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995).  Indeed, "'[t]he common-fund doctrine ... allows a person who maintains a lawsuit that results in the creation, preservation, or increase of a fund in which others have a common interest, to be reimbursed from that fund for litigation expenses incurred.'"  *In re Linerboard*, 2004 U.S. Dist. LEXIS 10532, at *12 n.6 (quoting *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. at 241).

Collectively, Plaintiff's Counsel expended a total of $12,775.25 on this case to date, the bulk of which were for mediation expenses.  (Paronich Decl. ¶ 17.)  The remaining amounts are for deposition transcripts, filing fees, and third party subpoena services fees.  The Notice informed Settlement Class Members that Class Counsel would apply for expenses incurred.

All of the expenses were necessary and appropriate for the prosecution of this Action, and all are of the type that are customarily incurred in litigation and routinely charged to clients billed by the hour.  *Id*.  From the beginning of the case, Plaintiff's Counsel were aware that they might not obtain any recovery as discussed above and, at the very least, would not recover anything until the Action was successful in producing a recovery.  Plaintiff's Counsel also understood that, even if the case was ultimately successful, an award of expenses would not compensate counsel for the lost use of the funds advanced to prosecute this Action.  As set forth in the accompanying declaration, the expenses incurred are reasonable in the circumstances and should be approved.  *See Tavares v. S-L Distribution Co.*, No. 1:13-CV-1313, 2016 WL 1743268, at *15 (M.D. Pa. May 2, 2016).

**D.      The Requested Incentive Award Should Be Approved**

"Incentive awards are not uncommon in class action litigation and particularly where ... a

common fund has been created for the benefit of the entire class."  *Sullivan v. DB Invs., Inc.*, 667

F.3d 273, 334 n.65 (3d Cir. 2011) (citation omitted).  "'The purpose of these payments is to

compensate named plaintiffs for the services they provided and the risks they incurred during the

course of class action litigation,' and to 'reward the public service of contributing to the

enforcement of mandatory laws.'"  *Id.* (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-

905, 2011 U.S. Dist. LEXIS 38663, at *63-64 (D.N.J. Apr. 8, 2011)).

Here, Plaintiff took steps to protect the interests of the Class and spent time pursuing the

claims underlying this matter.  To start, Plaintiff's initial decision to pursue this case as a class

action, and not simply seek individual damages, directly benefited the Class.  What's more, as

there is no other class representative in this matter, without Mr. Abramson, the common fund

established here might never have come to be.  Accordingly, Class Counsel requests that the

Court approve the requested Incentive Award of $10,000.

Class Counsel's request for an Incentive Award to Plaintiff of $10,000 is in line with

incentive awards that courts have approved in comparable TCPA matters, and is in fact on the

lower end.  *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK-RHS, 2015 U.S.

Dist. LEXIS 137209, at *5 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million

common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 U.S.

Dist. LEXIS 35421, at *17-20 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a

$25,000 service award to TCPA class representative); *Ritchie v. Van Ru Credit Corp.*, No. CV-

12-1714-PHX-SMM, 2014 WL 956131, at *5 (D. Ariz. Mar. 12, 2014) ($12,000 incentive award

from a $2.3 million common fund); *Martin v. Dun & Bradstreet, Inc.*, No. 1:12-cv-215, 2014

WL 9913504, at *3 (N.D. Ill. Jan. 16, 2014) (approving a $20,000 service award to a TCPA class representative).

Moreover, the Notice mailed to Settlement Class Members stated that Plaintiff's Counsel intended to ask the Court for an Incentive Award up to $10,000 to the Plaintiff for its service in representing the Class.  (Doc. No. 68-1.)  The Incentive Award requested is "fair and reasonable" and should be approved.  *Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, No. 08CV3610 CLW, 2015 U.S. Dist. LEXIS 64987, at *21-23 (D.N.J. May 18, 2015), *aff'd*, 639 F. App'x 880 (3d Cir. 2016); *accord Meijer, Inc. v. 3M*, No. 04-5871, 2006 U.S. Dist. LEXIS 56744, at *83 (Aug. 15, 2006).

## IV.    CONCLUSION

Based on the foregoing, Plaintiff's Counsel respectfully request that the Court approve the requested attorneys' fees and expenses and the proposed Incentive Award to Plaintiff. Plaintiff's proposed final approval order to be submitted on September 15, 2020 in conjunction with the Motion for Final Approval of Class Action Settlement will incorporate Plaintiff's requested attorneys' fee, expenses and the proposed service award.

Respectfully submitted,

**/s/ Brian K. Murphy**
Brian K. Murphy (admitted *pro hac vice*)
Joseph F. Murray (admitted *pro hac vice*)
Murray Murphy Moul + Basil LLP
1114 Dublin Road
Columbus, OH 43215
Telephone: 614.488.0400
Facsimile: 614.488.0401
E-mail: murphy@mmmb.com
         murray@mmmb.com

Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2020, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification to all counsel of record.

**/s/ Brian K. Murphy**
Brian K. Murphy